UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | No. 2:07-CR-10 |
| V. ) | District Judge Greer |
| ) | Magistrate Judge Inman |
| KENNETH R. FRAZIER ) | |
| ALLEN EUGENE FRAZIER ) | |
| GEORGE RAY HICKS, and ) | |
| ERNEST ARROWOOD, JR. ) | |
| JAMES WILLIAM RUSSELL ) | |

## **REPORT AND RECOMMENDATION**

The defendant, Ernest Arrowood, Jr., has filed a "Motion to Dismiss Count One Of The Indictment" (Doc. 48). The defendant Hicks moved to join in that motion, which the court allowed.[1] Likewise, the defendant Allen Frazier moved to join in the motion to dismiss, which the court also allowed.[2] Similarly, the defendant William Russell filed a motion to adopt Arrowood's motion to dismiss, which the court granted.[3]

The defendant Kenneth Frazier also filed a "Motion to Dismiss Count One Of The Indictment" (Doc. 54), based upon the same argument as his co-defendant, Ernest Arrowood. Thus, in effect there are five identical motions to dismiss Count One.

These motions have been referred to the United States Magistrate Judge under the

---

[1] *See*, Order, Doc. 95.

[2] *See*, Order, Doc. 94.

[3] The orders granting permission to defendants Kenneth Frazier and William Russell to join in Arrowood's motion to dismiss provided that the court's ultimate ruling on Arrowood's motion to dismiss would apply equally to them.

standing orders of this Court and pursuant to 28 U.S.C. § 636(b). An evidentiary hearing was held on April 4, 2007.

The relevant federal statute is 18 U.S.C. § 1955, which reads in pertinent part as follows:

> **(a)** Whoever conducts, finances, manages, supervises, directs, or owns all or part of an illegal gambling business shall be fined under this title or imprisoned not more than five years, or both.
>
> **(b)** As used in this section–
>
> **(1)** "illegal gambling business" means a gambling business which--
>
> **(i)** is a violation of the law of a State or political subdivision in which it is conducted;
>
> **(ii)** involves five or more persons who conduct, finance, manage, supervise, direct, or own all or part of such business; and
>
> **(iii)** has been or remains in substantially continuous operation for a period in excess of thirty days or has a gross revenue of $2,000 in any single day.

Thus, to trigger application of the federal gambling statute, the charged offense must be a "gambling business" which is a violation of state law. In other words, for 18 U.S.C. § 1955 to apply, there must be a predicate state gambling offense.

Count 1 of the Superceding Indictment[4] alleges as follows:

> From on or before December 20, 2002, and continuously thereafter until on or about June 11, 2005, in the Eastern District of Tennessee, the defendants, KENNETH R. FRAZIER, ALLEN EUGENE FRAZIER, GEORGE RAY HICKS, ERNEST ARROWOOD, JR., and JAMES WILLIAM

---

[4]Doc. 69.

> RUSSELL, and others known and unknown, unlawfully, willfully and knowingly did conduct, finance, manage, supervise, direct and own all or part of an illegal gambling business, said illegal gambling business involving cockfighting and gambling on such fights in violation of the laws of the State of Tennessee (Sections 39-17-502, *et seq.* and 39-14-203, Tennessee Code), in which said business was conducted; which illegal gambling business involved, during the period aforesaid, five or more persons who conducted, financed, managed, supervised, directed and owned all or a part thereof; and which gambling business remained in substantially continuous operation for a period in excess of thirty days and has had gross revenues of $2,000.00 or more in a single day, all in violation of Title 18, United States Code, Sections 1955 and 2.

As can be seen, the United States alleges that the predicate offenses for purposes of 18 U.S.C. § 1955, i.e., the necessary antecedent violations of state law, are § 39-17-502 and 39-14-203 of the Tennessee Code. Section 39-17-502 is Tennessee's "gambling statute": "(a) a person commits an offense who knowingly engages in gambling." The preceding Section, 39-17-501, defines "gambling":

> As used in this part, unless the context otherwise requires:
>
> (1) Gambling is contrary to the public policy of this state and means risking anything of value for a profit whose return is to any degree contingent on chance, or any games of chance associated with casinos, including, but not limited to, slot machines, roulette wheels and the like.   * * *

Section 39-14-203 of the Tennessee Code is part of what is generally referred to as Tennessee's "animal cruelty law." That statute reads as follows:

**§ 39-14-203. Fighting or baiting exhibitions**

> (a) It is unlawful for any person to:
>
> (1) Own, possess, keep, use or train any bull, bear, dog, cock or other animal, for the purpose of fighting, baiting or injuring another such animal, for amusement, sport or gain;
>
> (2) Cause, for amusement, sport or gain, any animal referenced in subdivision (a)(1) to fight, bait or injure another animal, or each other;
>
> (3) Permit any acts stated in subdivisions (a)(1) and (2) to be done on any premises under the person's charge or control, or aid or abet those acts; or
>
> (4) Be knowingly present, as a spectator, at any place or building where preparations are being made for an exhibition for the fighting, baiting or injuring of any animal, with the intent to be present at the exhibition, fighting, baiting or injuring.

Defendants argue that baiting or operating a cockfighting pit or arena is not included within the definition of "gambling" under Tenn. Code Ann. §39-17-501. Defendants also argue that a violation of the animal cruelty statute, Tenn. Code Ann. § 39-14-203, does not constitute a predicate offense under 18 U.S.C. § 1955.

Defendants' last argument will be addressed initially, i.e., that the animal cruelty statute will not trigger an application of the federal gambling statute. With this argument the court agrees. The federal statute refers to "illegal *gambling* businesses" in both subparagraphs (a) and (b). Subparagraph (b) explicitly defines an "illegal gambling business" as a *gambling business* which is a violation of state law. If one completely puts aside Tenn. Code Ann. § 39-17-501, the gambling statute, and looks only to the animal cruelty statute as the

potential predicate offense, there indeed could be no federal offense simply because the federal statute refers to a *gambling* business. Staging an animal fight is barbaric, but it is not *per se* gambling.

However, Tenn. Code Ann. § 39-17-501 cannot be ignored simply because it exists. It defines gambling as "risking anything of value for a profit," i.e., betting money, on an outcome controlled by chance. Gambling on the outcome of a cockfight, for reasons discussed later in this report, is risking money on an outcome based purely on chance. Even if Tennessee's animal cruelty statute cannot form the predicate state offense under 18 U.S.C. § 1955, wagering on the outcome of a cockfight is undeniably embraced within Tenn. Code Ann. § 39-17-501. In short, the reference in Count 1 to Tenn. Code Ann. § 39-14-203, the animal cruelty statute, was both unnecessary and erroneous, but that in no way affects the validity of Count 1. At the most, the reference to Tenn. Code Ann. § 39-14-203 should be simply redacted from Count 1.

As already mentioned, the defendants argue that cockfighting does not come within the provisions of Tennessee's gambling statute, Tenn. Code Ann. § 39-17-501. In this regard, they argue that cockfighting is a *sport* and not a game of chance. They argue that cockfighting is not explicitly mentioned in the gambling statute and therefore it is not gambling. Somewhat in the same vein, they argue that the statute refers to games of chance associated with casinos, slot machines, "and the like," and that the first part of subsection 1 must be construed as referring only to slot machines and similar forms of gambling. This argument, respectfully, is incorrect. For the sake of convenience, the words of the statute are

5

again reproduced:

> (1) Gambling is contrary to the public policy of this state and means risking anything of value for a profit whose return is to any degree contingent on chance, **or** any games of chance associated with casinos, including, but not limited to, slot machines, roulette wheels and the like. (boldface type supplied).

It is important to note the statute's use of the disjunctive "or." There is no logical or semantical reason to limit the scope of the first part of that sentence by the language in the second part. A period could easily have been put after the word *chance* and the second part of the sentence written in this manner: "Likewise, risking anything of value for a profit on any games of chance associated with casinos . . . ." If, instead of the word *or*, the Tennessee Legislature had used the words "such as," or "including," then the defendants' argument would have more merit. But the word *or* does not remotely suggest the same meaning as "such as." Again, *or* is disjunctive, and the first half of the sentence in paragraph (1) is free-standing and independent of the second half.

Somewhat in a similar vein, the defendants argue that (1) in Tennessee cockfighting is a sport, and (2) Tenn. Code Ann. § 39-17-501 does not include "sports" as a gambling activity. With regard to the first premise of defendants' argument - that cockfighting is classified as a sport in Tennessee - defendants rely upon *State of Tennessee v. Nashville Baseball Ass'n*, 211 S.W. 357 (Tenn. 1919). As the style of this case suggests, the issue was baseball; specifically, whether a game of professional baseball could be played on Sundays in the city of Nashville, Tennessee's "blue law" notwithstanding. *The Nashville Baseball Association* case cannot be read as a judicial declaration that cockfighting in Tennessee is a

sport. But even if it could be so construed, it makes no difference, since gambling on the outcome of sporting events violates Tennessee's gambling statute. The athletes themselves, who are competing in any athletic event, are not gambling, even if they are professional athletes who are competing for a valuable purse. Professional golf comes immediately to mind; the PGA tour has an annual tournament in Memphis that pays out a significant purse. The professional golfers are not gambling by competing in that because, from their perspective, the outcome is based upon their skill and effort, not by mere chance. The same would be true of boxing, football, basketball, and any other sport one would care to name. On the other hand, it undeniably is illegal for spectators to bet on the outcomes of those same sporting events because those outcomes, *from the perspective of the spectators,* is based purely on chance. Does it follow that the University of Tennessee, by providing a football stadium or basketball arena for its teams is operating an illegal gambling business because many spectators bet on the outcome of the games? Obviously, the answer is no, since the University fields its athletic teams, and provides facilities in which those athletic teams play, for a purpose other than gambling. But, if an individual were to furnish a venue solely for the purpose of taking bets on sporting events,[5] then that person would be guilty of conducting an illegal gambling business in Tennessee. At this point it may be asked: Is owning or operating a cockfighting pit more akin to the University's operation of Neyland Stadium, or is it more akin to the bookie who takes bets on sporting events across the country like the

---

[5]Like the pool room that flourished in downtown Morristown for many years during this magistrate judge's youth. (And, no, he never entered that establishment.).

Morristown pool room? The Tennessee courts long ago answered this question:

> Was the defendant guilty of an indictable offence, is the question. Is the act of cock-fighting for money, or other valuable thing, gaming? There can be no doubt of this. Definition in the Act of 1799, Ch. 8, Sec. 2, clearly embraces it. By that Act, "any game or match of hazard or address for money or other valuable thing" is gaming.

*Johnson v. The State*, 36 Tenn. 614, 1857 WL 2540 at *4 (Tenn. 1857).

> How could anyone more effectually promote and encourage a game or match of this kind than by not only giving it countenance by his presence, but actually paying his money to support and sustain it? The preparations are made by the principal offender; notice is given of the time and place; the public are called upon to attend and pay money for the privilege of participating in the enjoyment of the sport; and the defendant accepts the invitation, and contributes his money to the extent of the fee demanded. Is he not actively and efficiently aiding, abetting, and encouraging the unlawful thing?

*Id.*

> If one species of this vice could be more low, groveling, and despicable than another, it would seem to be [cockfighting]. It adds barbarity and cruelty to the other attributes of ordinary gaming. The age has passed when it could be tolerated as a sport, much less as a mode of gambling. Regardless of what other jurisdictions may have held the courts of this state have long deemed cockfighting to fall within the ban of statutory prohibitions upon gambling.[6]

*Id.*

More recently, in 1984, the Supreme Court of Tennessee declared cockfighting to be a gambling enterprise. Although the Indictment in that case charged the defendants with being present at a cockfight in violation of state law, the court made this statement regarding

---

[6]This statement was penned in 1857. Precisely 150 years later, the "sport" of cockfighting continues, and there are those who still insist that it is an acceptable pastime.

gambling and cockfighting:

> [T]he courts of this state have long deemed cockfighting to fall within the bounds of statutory prohibitions upon gambling.
>
> Over one hundred forty years ago in the case of *Bagley v. State*, 20 Tenn. 486 (1840), this Court held that cockfighting was gaming, and that betting thereon was prohibited under the gaming statutes of the state.

*State v. Tabor*, 678 S.W.2d 45 at 47.

> The statutes under consideration [that prohibit attendance at cock fights], of course, are not gaming statutes, and appellees are not being prosecuted for gambling. The statutes, however, reflect the continuation, broadening and a modernization of the public policy of this jurisdiction going far back into the nineteenth century.

*Id.*

Thus, it is seen that Tennessee has long and consistently held that cockfighting is "gambling." And, in anticipation that the defendants might suggest that Tennessee's gambling statute in 1984 was different than it is now, it is clear that the statute in existence in 1984 was remarkably similar to the present statute:

> (3). "Gambling" means risking any money, credit, deposit, or other form of value for gain contingent in whole or part upon luck, chance or the operation of a gambling device, but does not include: bona fide contests of skill, speed, strength or endurance in which awards are made only to entrants or the owners of entries; bona fide business transactions which are valid under the law of contracts; and other acts or transactions expressly authorized by law; . . . .

Tenn. Code Ann. § 39-6-601 (Repealed 1989).

Clearly, the statutory definition of gambling in 1984, the date of the *Tabor* decision,

9

was identical in substance to the current statute, Tenn. Code Ann. § 39-17-501.

In conclusion, cockfighting is gambling under Tennessee law; a number of Tennessee cases so hold, and there are none to the contrary that can be found. It follows, therefore, that the defendants' alleged operation of a cockfighting pit constituted a gambling business under Tenn. Code Ann. § 39-17-501, as a result of which the defendants violated Tenn. Code Ann. § 39-17-502. This violation provides the necessary predicate offense under 18 U.S.C. § 1955.

For the foregoing reasons, its is respectfully recommended that defendants' motions to dismiss Count One of the Indictment be denied.

Any objections to this report and recommendation must be filed within ten (l0) days of its service or further appeal will be waived. 28 U.S.C. § 636(b)(1)(B) and (C). *United States v. Walters*, 638 F.2d 947-950 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).

Respectfully submitted,

                                            s/ Dennis H. Inman  
                                      United States Magistrate Judge